UNITED FIDELITY LIFE INS. COMPANY *v.* DEMPSEY.

4-5279                                                                122 S. W. 2d 170

Opinion delivered December 5, 1938.

*W. P. Strait,* for appellant.
*Opie Rogers,* for appellee.

SMITH, J. Appellee, holding a disability insurance policy in appellant company, sued appellant, the insurer, for a breach of that contract, upon the theory that the company had repudiated it by failure to perform its conditions, by paying disability benefits. The judgment recovered by appellee in that case was reversed. *United Fidelity Life Ins. Co.* v. *Dempsey,* 193 Ark. 204, 98 S. W. 2d 943. We there held that appellee was entitled to recover disability benefits, but that the assertion, in good faith made by the insurer, that appellee was not in fact totally disabled, did not constitute a breach of the contract and a repudiation thereof. In other words, if the insurer had concluded, upon investigation and in good faith, that the insured was not in fact totally and permanently disabled, it had the right to assert that fact, without being held to have repudiated the contract. The same question is presented on this appeal as was involved in and decided upon the former appeal, and the rule there announced is decisive of the present appeal, it being from a judgment based upon the jury's finding that appellant had breached and repudiated the contract.

Without reciting the testimony in detail, it may be said here, as was said in the former opinion, that the testimony is sufficient to support the finding that appellee is disabled within the meaning of the provisions of his insurance policy, and is, therefore, entitled to recover the monthly benefits provided for in the policy; but it does not follow, on that account, that he is entitled to the present value of such payments as would accrue during the remainder of his expectancy, as was decided by the verdict and judgment from which is this appeal. If he recovers from his disability, his right to receive benefits would cease. On the other hand, if the insurer arbitrarily or fraudulently took the position that appellee was no longer disabled, this would be a breach of the contract of insurance. In such case the insurer would have no right to require the insured to expend his benefits in repeated suits to collect them, so that the question presented here, as was the case on the former appeal, is whether the insurer had acted arbitrarily or fraudulently in refusing to continue disability payments after the

fact had been established that he was disabled within the meaning of the policy. In this connection, it may be said that total disability having been established, there was a presumption that this condition continued; but this is a presumption of fact, and not of law, and may be rebutted and be shown not to be true. *Equitable Life Assurance Society* v. *Bagley,* 192 Ark. 749, 94 S. W. 2d 722.

Here, the undisputed testimony is to the effect that the insurer had received information, from sources apparently reliable, to the effect that appellee was no longer totally disabled, and an investigation of these reports appeared to confirm their truth.

These circumstances were to the following effect: Appellee is the son-in-law of W. E. Jumper, a traveling shoe salesman who owns a large shoe store in the city of Conway. There appeared in the December 31, 1936, issue of a local newspaper the following news item:

"Conway Shoe Store
"Sold by M'Alister

"J. P. McAlister announced today that W. E. Jumper has completed negotiations for the purchase of the Conway Shoe Store, owned by Mr. McAlister, and that he plans to remove with his family to Harrison, his former home, where he will be associated in the shoe business with Dave Heuer, his brother-in-law.

"The Conway Shoe Store which has enjoyed a fine business under Mr. McAlister's management, will be operated by Mr. Jumper's son-in-law, Jesse Dempsey, and his daughter, Miss Ruth Jumper, it was announced.

"The consideration was said to have been $12,500.

"George Carter will remain with the store as salesman and George Schrekenhoeffer has returned to manage the repair department."

Subsequent to this notice and after January 1, 1937, appellee became connected with the shoe store and spent much time there. It was shown that he played golf, and attended a Christmas dance, and participated in the dancing. After coming into possession of this information the insurer called upon appellee for a statement as to his then existing condition, which was not furnished.

The testimony tending most strongly to show that the refusal to continue payments of disability benefits was arbitrary and fraudulent was the attitude of the appellant in regard to payment of benefits which accrued between the date of the first trial and the affirmance of that judgment by this court. The opinion on the former appeal was delivered November 23, 1936, and the judgment in that case for $50 was paid on December 1, 1936, and appellant's attorney wrote appellee's attorney stating that $100 in addition would be due, including the January, 1937, payment. But, instead of paying the $100 in addition to the $50 judgment, a check was sent for only $50. Thereafter payments accumulated at the rate of $10 per month, amounting to $150, and that liability was compromised and settled for $130, appellee then being entitled to $150, if entitled to anything at all. But while payments were accruing to the extent stated a controversy had arisen as to whether any additional payments should be made.

Appellee explained to the satisfaction of the jury the circumstances above detailed which had led the insurer to conclude that his disability had ended. It was shown that the newspaper notice to the effect that appellee had taken over the management of the shoe store was published without authority, and was not true, that appellee stayed in the store when he pleased and did what he was able to do, for which he was paid no salary, and that he was supported by his father and his father-in-law. Appellee had previously submitted to an examination by a physician selected by the insurance company, and had been advised by the doctor to take as much exercise as he was able to, and that he had played a few games of golf, but that it required him four hours to make the rounds, which other players made in from one to an hour-and-a-half. Appellee admitted that he had danced on the Christmas occasion, and his own doctor stated that appellee was able to do this if he danced gently and for a short time. But appellee testified that any kind of work or exercise occasioned him much pain, and could be sustained for only short periods of time, and that he was able to render only slight and occasional services at

the shoe store, and that frequently he was unable to go there for several days together.

Appellee's testimony was to the effect that as the result of a gasoline explosion which had severely burned him, his legs had been reduced from twenty to thirty per cent. of their normal size, and that he had four skin grafts and had been ordered to return to the hospital for another, and his physicians testified that there was danger of blood clots in the legs, if appellee stood up too much and caused the circulation "to flow to his legs too much," and that this would cause ulcers, and that his legs were as well as they would ever be.

While the facts and circumstances detailed above are sufficient to support the finding of the jury that appellee is totally and permanently disabled and rendered unable to follow a gainful occupation, we think it insufficient to support the finding that the insurer had acted arbitrarily or fraudulently in raising that question, and the same judgment must now be entered as was rendered upon the former appeal.

The judgment for the present value of future installments of benefits, which was found and is admitted to be $2,000, if a recovery could be sustained on that account, will be reversed, and judgment will be entered here for $100, which appellant admits to be the amount of installments due at the time of the trial, with interest at 6 per cent. on each delinquency from the date it was due to the date of trial, and thereafter on the whole amount until paid.